1

Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 BENJAMIN L. ANDERSON, | ) Case No.  **'19 CV 1040 GPC BLM** |
| 12              Plaintiff, | ) |
| 13        v. | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| 14 | ) **FEDERAL SECURITIES LAWS** |
| 15 HOMEFED CORPORATION, PATRICK D. BIENVENUE, PAUL J. BORDEN, | ) |
| TIMOTHY M. CONSIDINE, BRIAN P. | ) **JURY TRIAL DEMANDED** |
| 16 FRIEDMAN, JIMMY HALLAC, MICHAEL | ) |
| 17 A. LOBATZ, and JOSEPH S. STEINBERG, | ) |
| | ) |
| 18              Defendants. | ) |
| 19 | ) |
| | ) |
| 20 | ) |
| 21 | |

22        Plaintiff Benjamin L. Anderson ("Plaintiff"), by and through his undersigned counsel, for

23 his complaint against defendants, alleges upon personal knowledge with respect to himself, and

24 upon information and belief based upon, *inter alia*, the investigation of counsel as to all other

25 allegations herein, as follows:

26

27

28

## NATURE OF THE ACTION

1.     This action is brought by Plaintiff against HomeFed Corporation ("HomeFed" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which HomeFed will be acquired by Jefferies Financial Group Inc. ("Jefferies") through its wholly owned subsidiary Heat Merger Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2.     On April 15, 2019, Jefferies issued a press release announcing that it had entered into an Agreement and Plan of Merger dated April 12, 2019 (as amended on May 2, 2019, the "Merger Agreement") to acquire the shares of HomeFed common stock it does not already own.[1]  Pursuant to the terms of the Merger Agreement, each issued and outstanding share of HomeFed will be converted into the right to receive 2.0 shares of Jefferies common stock (the "Merger Consideration").  Based on the closing price of Jefferies common stock of $20.45 per share on May 2, 2019, the implied value of the Merger Consideration is $40.90.

3.     On May 20, 2019, defendants filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that HomeFed stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the background process leading to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as HomeFed stockholders need such information in order to make a fully informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

---

[1] As of May 20, 2019, Jefferies is the beneficial owner of 10,852,123 shares of HomeFed common stock, which represents approximately 70% of the outstanding shares of HomeFed common stock.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.      In short, unless remedied, HomeFed's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   HomeFed is incorporated in Delaware and is headquartered in this District.   Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of HomeFed.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     Defendant HomeFed is a Delaware corporation and maintains its principal executive offices at 1903 Wright Place, Carlsbad, California 92008.  HomeFed's common stock is quoted on the OTCQB Marketplace under the ticker symbol "HOFD."

10.     Defendant Patrick D. Bienvenue ("Bienvenue") has been a director of HomeFed since August 1998.  From January 1996 until April 2011, defendant Bienvenue served in a variety of executive capacities with real estate related subsidiaries of Jefferies.

11.     Defendant Paul J. Borden ("Borden") is Vice Chairman of the Board and has been a director of HomeFed since May 1998.  Defendant Borden previously served as President of the Company from May 1998 to February 2018.  Defendant Borden was a Vice President of Jefferies from August 1998 through October 2000.

12.     Defendant Timothy M. Considine ("Considine") has been a director of HomeFed since January 1992 and previously served as Chairman of the Board from 1992 to December 1999.

13.     Defendant Brian P. Friedman ("Friedman") has been a director of HomeFed since April 2014.  Defendant Friedman has served as a director and President of Jefferies since March 2013, a director and executive officer of Jefferies Group LLC ("Jefferies Group"), a subsidiary of Jefferies, since July 2005, and Chairman of the Executive Committee of Jefferies Group since 2002.  Defendant Friedman has also served as President of Jefferies Capital Partners, a private equity fund management company controlled by defendant Friedman in which Jefferies Group has an ownership interest.

14.     Defendant Jimmy Hallac ("Hallac") has been a director of HomeFed since March 2017.  Defendant Hallac is a managing director of Jefferies and has been employed at Jefferies since 2002.  Defendant Hallac also serves on the boards of certain of Jefferies' portfolio entities, including, FXCM Group LLC, as Chairman, Linkem S.p.A. and Golden Queen Mining Company LLC.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.     Defendant Michael A. Lobatz ("Lobatz") has been a director of HomeFed since February 1995.

16.     Defendant Joseph S. Steinberg ("Steinberg") has been Chairman of the Board since December 1999 and a director of HomeFed since August 1998.   Defendant Steinberg is also Chairman of the board of directors of Jefferies, served as President of Jefferies from January 1979 to March 2013, and is a director of Jefferies Group.

17.     Defendants identified in paragraphs 10-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     Jefferies is a New York corporation and maintains its principal executive offices at 520 Madison Avenue, New York, New York 10022.   Jefferies is a diversified financial services company engaged in investment banking and capital markets, asset management and direct investing.   Jefferies's common stock is traded on the New York Stock Exchange under the ticker symbol "JEF."

19.     Merger Sub is a Delaware limited liability company and a wholly-owned subsidiary of Jefferies.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20.     HomeFed is a developer and owner of residential and mixed-use real estate projects in California, Virginia, South Carolina, Florida, Maine and New York.   HomeFed operates in two reportable segments – real estate and corporate.   The corporate segment primarily consists of investment income and overhead expenses.   HomeFed's real estate segment consists of a variety of residential land development projects, commercial properties and other unimproved land, all in various stages of development.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

21.     For example, the Company's Otay Land project consists of approximately 4,450 acres of land within the Otay Ranch community in south San Diego County, California.  The Otay Land project is currently approved for approximately 13,050 residential units and 1.85 million square feet of commercial space.  The Company's strategic priority in 2019 is to optimize its asset in the Otay Ranch area by focusing on expediting development and maximizing revenue.

22.     Pursuant to the San Elijo Hills project, the Company owns 85% of and serves as the development manager for San Elijo Hills, a master-planned community in San Diego County, California, consisting of approximately 3,500 homes and apartments and a commercial and residential towncenter.  As of March 31, 2019, HomeFed had sold 3,445 of the 3,461 single family lots and multi-family units, and has an agreement with a homebuilder to construct and sell on the Company's behalf, the homes on the remaining 16 single family lots.

23.     In December 2018, HomeFed formed a joint venture partnership with RedSky JZ Fulton Holdings, LLC ("RS JZ") for the acquisition and possible redevelopment of a site located on the Fulton Mall corridor in Downtown Brooklyn, New York.  The property consists of 15 separate tax lots, divided into two premier development sites which may be redeveloped with buildings consisting of up to 540,000 square feet of floor area development rights.

**The Sale Process Leading to the Proposed Transaction**

24.     In February 2014, Jefferies entered into a purchase agreement with HomeFed to contribute to HomeFed certain of Jefferies' real estate subsidiaries, investments and $12.5 million in cash in exchange for shares of HomeFed common stock.  Upon the closing of that transaction, Jefferies' ownership of HomeFed common stock increased from approximately 31% to approximately 65% of the outstanding shares.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.     In March 2017, Jefferies proposed to purchase shares of HomeFed common stock from a former HomeFed director.   In response, the Board formed a special committee of independent directors, comprised of defendants Considine and Lobatz (the "Special Committee").

26.     Between March and August 2017, Jefferies became the beneficial owner of approximately 70% of the outstanding shares of HomeFed's common stock.

27.     In September 2017, defendant Considine wrote a letter to defendant Steinberg, Chairman of both Jefferies' board of directors and the HomeFed Board, stating defendant Considine's view that the Company should merge into Jefferies, suggesting an exchange ratio of approximately 2.0 shares of Jefferies common stock for each share of HomeFed common stock Jefferies did not own.

28.     In January 2018, the Special Committee met to consider proposing to Jefferies a transaction whereby Jefferies would acquire a number of shares of HomeFed common stock in exchange for shares of Jefferies common stock that would increase Jefferies' current ownership in HomeFed to no less than 80%.

29.     On March 15, 2018, defendant Hallac advised the Company's legal counsel that Jefferies was not interested at that time in a strategic transaction to increase its ownership in the Company.

30.     Throughout 2018, defendant Steinberg and other Jefferies representatives had conversations with a representative of Beck, Mack & Oliver LLP ("BMO"), which owned approximately 9% of the outstanding shares of HomeFed common stock, regarding the possibility of a transaction whereby Jefferies would acquire all of the shares of HomeFed common stock it did not already own for consideration of Jefferies common stock.

31.     In early February 2019, defendant Steinberg and Richard Handler ("Handler"), Chief Executive Officer ("CEO") of Jefferies, met with a BMO representative who encouraged Jefferies

to make a proposal for Jefferies to acquire all of the shares of HomeFed common stock it did not already own at an exchange ratio of two shares of Jefferies common stock per share of HomeFed common stock, and indicated that BMO would support such a transaction.  The BMO representative also asked defendant Steinberg if he, in his personal capacity, would also support such a transaction and defendant Steinberg said he would.  The BMO representative further indicated he had been in contact with a representative of an investment advisor firm that advises accounts holding a substantial number of shares of HomeFed common stock, referred to in the Proxy Statement as "Advisor A."  Advisor A had also indicated it would support such a transaction.

32.    On February 19, 2019, Jefferies issued a press release announcing its proposal to acquire the remaining share of HomeFed common stock it did not already own for two shares of Jefferies common stock per share of HomeFed common stock.

33.    Beginning on February 25, 2019, the parties' legal advisors began exchanging drafts of a merger agreement and voting agreement for Jefferies.

34.    At a March 15, 2019 Special Committee meeting, the Special Committee's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan") noted, among other things, that Jefferies had declined to provide financial projections for Jefferies.   Based solely on publicly available information related to Jefferies common stock, the Special Committee determined that the Jefferies common stock to be received by HomeFed stockholders could reasonably be considered a cash equivalent to such stockholders once received.  The Special Committee also noted that given the fixed exchange ratio with no collar or other value protections, the Company's stockholders would be subject to volatility in the price of Jefferies common stock.

35.    On March 23, 2019, a representative of Houlihan spoke with a representative of Advisor A who, among other things, encouraged the Houlihan representative to communicate to the Special Committee Advisor A's view that the Special Committee should attempt to negotiate for a

- 8 -

structural mechanism that would improve the transaction value in the event the price of Jefferies common stock remained lower than the price of such stock prevailing when the proposed transaction was announced on February 19, 2019.

36.    On March 25, 2019, the Special Committee determined to make a proposal for an exchange ratio valued at $42.00 at closing.

37.    On March 26, 2019, the representative of Jefferies who spoke the previous day with representatives of Houlihan and the Special Committee's legal counsel, obtained permission from one member of the Special Committee for another representative of Jefferies to contact the representative of BMO, and such other representative of Jefferies did so.  In the discussion between such other representative of Jefferies and the representative of BMO, the representative of BMO indicated that BMO continued to be willing to vote in favor of the proposed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock.

38.    Later that day, the Special Committee determined that Jefferies should not have any further discussions with BMO.

39.    On March 27, 2019, Jefferies rejected the Special Committee's March 25 proposal because, among other things, (a) defendant Considine had written the September 2017 letter referencing an exchange ratio of two shares of Jefferies per share of HomeFed, and (b) Jefferies believed BMO would support the transaction with the originally proposed exchange ratio.

40.    On April 3, 2019, Jefferies informed Houlihan that it was willing to offer HomeFed stockholders an election to receive for each share of HomeFed common stock either (a) $38.00 in cash, or (b) two shares of Jefferies common stock, provided that if the value of Jefferies common stock is greater than $21.00 per share at the closing of the proposed transaction, the exchange ratio would be decreased to the number of shares of Jefferies common stock with a value of $42.00 at the closing of the proposed transaction, based on a calculation methodology to be determined.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     At an April 12, 2019 Special Committee meeting, Houlihan reviewed and discussed its financial analysis of HomeFed, the proposed transaction and certain financial observations related to Jefferies.   Following discussion, Houlihan rendered its fairness opinion.   The Special Committee then approved the Merger Agreement.   Later that day, the Board approved the Merger Agreement and the parties executed the Merger Agreement.

42.     On April 15, 2019, Jefferies issued a press release announcing the Proposed Transaction that stated, in relevant part:

> New York, New York, April 15, 2019 — Jefferies Financial Group Inc. (NYSE: JEF or Jefferies), which currently owns approximately 70% of the outstanding shares of common stock of HomeFed Corporation (OTCMKTS: HOFD or HomeFed), a developer and owner of residential and mixed-use real estate properties primarily in California and New York, announced today that the Board of Directors of Jefferies and the Special Committee of the Board of Directors of HomeFed have approved a definitive merger agreement under which Jefferies will acquire the shares of HomeFed common stock that it does not already own. Under the terms of the transaction:
>
> • HomeFed stockholders will be given the right to elect to receive either cash or shares of Jefferies common stock in exchange for their HomeFed shares.
>
> • If a HomeFed stockholder elects to receive cash, that stockholder will receive $38.00 in cash for each share of HomeFed common stock.
>
> • If a HomeFed stockholder elects to receive shares of Jefferies' common stock and the Jefferies' average share price (as defined below) is equal to or less than $21.00 per share, that stockholder will receive two shares of Jefferies common stock for each share of HomeFed common stock.
>
> • If a HomeFed Stockholder elects to receive shares of Jefferies' common stock and the Jefferies' average share price is more than $21.00 per share, that stockholder will receive less than two shares of Jefferies common stock for each share of HomeFed common stock, with the exchange ratio being calculated by dividing $42.00 by the Jefferies' average share price. For example, if the Jefferies' average share price is $22.00, the exchange ratio would be 1.9091 and any Homefed stockholder electing to receive shares of Jefferies' common stock would receive 1.9091 shares of Jefferies common stock.
>
> • If a HomeFed stockholder makes no election, that stockholder will be deemed to have made a cash election if the Jefferies' average share price is

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

equal to or less than $19.00 per share or a share election if the Jefferies' average share price is more than $19.00 per share.

The Jefferies' average share price shall be calculated as the volume-weighted average price of a share of Jefferies common stock for the ten consecutive trading days ending on the trading day that is three trading days before the date of the HomeFed stockholders meeting at which HomeFed stockholders will vote on the transaction.

The transaction, which is expected to close during the third quarter of 2019, is subject to customary closing conditions, including approval by a majority of the HomeFed stockholders (excluding Jefferies or its affiliates).

In addition, concurrently with the execution of the merger agreement, Jefferies entered into a voting agreement with HomeFed, pursuant to which Jefferies has agreed to vote all of the shares of HomeFed common stock owned by it in favor of the adoption of the merger agreement.

Following completion of the transaction, shares of HomeFed common stock will no longer be quoted on the OTCQB Marketplace, there will be no public market for shares of HomeFed common stock, and shares of HomeFed common stock will be deregistered.

For a more complete description of the transaction, please see Jefferies' Form 8-K filed today.

As previously reported, Jefferies' Board of Directors has approved the repurchase of shares in the open market to offset the issued shares for the transaction, which is in addition to the $500 million share-repurchase approval already in place. The transaction would involve the issuance of as many as 9.3 million shares of Jefferies common stock, worth approximately $189 million based on the closing price of Jefferies common stock on April 12, 2019. Upon completion of the transaction, Jefferies' total post-transaction carrying value of HomeFed will be approximately $631 million.

Rich Handler and Brian Friedman, CEO and President, respectively, of Jefferies, said "We are very pleased that the Special Committee of the Board of Directors of HomeFed has approved the transaction. Merging with HomeFed will allow Jefferies to consolidate HomeFed for tax purposes (which will avoid an extra layer of taxes as HomeFed monetizes its assets), affording greater flexibility as to the timing and form of maximizing value over time. We very much look forward to continuing to work closely with Chris Foulger, Paul Borden and the entire HomeFed team to achieve those goals."

43.     That same day, and over the course of the following week, representatives of BMO and Advisor A  communicated to Jefferies, HomeFed, and the Special Committee that they

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

preferred the originally proposed fixed exchange ratio of two shares of Jefferies common stock per share of HomeFed common stock to the consideration set forth in the Merger Agreement dated April 12, 2019.

44.     On April 29, 2019, a representative of Jefferies advised the Special Committee's legal counsel that Jefferies was willing to amend the Merger Agreement to provide for a fixed exchange ratio of two shares of Jefferies common stock for each share of HomeFed common stock, but without the $38.00 per share cash election.  Further, Jefferies was unwilling to consider any other form of protections from a decline in the value of Jefferies common stock prior to the closing of the proposed transaction.  At a Special Committee meeting later that day, the Special Committee determined to amend the Merger Agreement to provide for a fixed exchange ratio of two shares of Jefferies common stock per share of HomeFed common stock and remove the cash election.

45.     On May 2, 2019, HomeFed announced in a Form 8-K filed with the SEC that it had entered into an amendment to the Merger Agreement.

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

46.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to HomeFed's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

47.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the background of the Proposed Transaction.  Accordingly, HomeFed stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning the Background of the Proposed Transaction*

48.     The Proxy Statement fails to disclose or misstates material information regarding the background process leading up to the Proposed Transaction.

49.     For example, the Proxy Statement sets forth that in March 2017, Jefferies proposed a transaction to purchase shares of HomeFed common stock from a former HomeFed director, yet fails to disclose the identity of the former HomeFed director or the price terms proposed by Jefferies to purchase the HomeFed shares.

50.     Additionally, the Proxy Statement fails to disclose whether defendant Considine discussed with any other HomeFed Board members not affiliated with Jefferies, the contents of his September 2017 letter to defendant Steinberg stating defendant Considine's view that HomeFed should be merged into Jefferies and cease to be a separate public company and suggesting an exchange ratio of approximately two shares of Jefferies common stock for each share of HomeFed common stock Jefferies did not own.  The Proxy Statement further fails to disclose when defendant Considine was granted, and who granted defendant Considine, the authority to communicate an acquisition proposal to Jefferies.

51.     The Proxy Statement also fails to disclose the price terms discussed between Jefferies and BMO, throughout 2018, for a transaction whereby Jefferies would acquire all of the shares of HomeFed common stock that it did not already own for consideration consisting of Jefferies common stock.

52.     The Proxy Statement states that at the March 15, 2019 Special Committee meeting, Houlihan reported on conversations that had occurred, at the direction of the Special Committee, between Houlihan and the chief financial officer and other representatives of the management team of Jefferies regarding Jefferies business, operations and financial condition with Houlihan noting that Jefferies had declined to provide financial projections for Jefferies.  The Proxy Statement fails

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to disclose whether the Special Committee subsequently directed Houlihan to press Jefferies, or the Special Committee itself pressed Jefferies, to provide Jefferies' financial projections.

53.    The Proxy Statement sets forth that on March 26, 2019, a representative of Jefferies obtained permission from one member of the Special Committee for Jefferies to contact BMO. Thereafter, at a Special Committee meeting held later the same day, the Special Committee determined that Jefferies should be advised not to have any further discussions with BMO.  The Proxy Statement fails to disclose the identity of the one Special Committee member who permitted Jefferies to communicate with BMO and the reasons for the Special Committee's determination later that day to advise Jefferies to have no further discussions with BMO.

54.    Additionally, the Proxy Statement fails to disclose the financial observations relating to Jefferies and the Proposed Transaction reviewed with the Special Committee by Houlihan at the March 15, March 22, April 12, and May 2, 2019 Special Committee meetings.

55.    The Proxy Statement further fails to disclose whether the Special Committee was ever provided with and reviewed Jefferies' financial projections before entering into the Proposed Transaction.

56.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

57.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other HomeFed stockholders will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

58.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

60.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the background process leading to the Proposed Transaction.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

61.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting or appraisal decision on the Proposed Transaction.

62.    By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

63.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **COUNT II**

### **Claims Against the Individual Defendants for**
### **Violations of Section 20(a) of the Exchange Act**

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of HomeFed within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of HomeFed and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

68.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' conduct, HomeFed's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of HomeFed, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: June 3, 2019

**WEISSLAW LLP**
Joel E. Elkins

By: _____

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
            -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

- 18 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS